UNITED STATES v. J. R. SIMON & CO.

(Circuit Court of Appeals, Second Circuit. April 13, 1909.)

No. 189 (4,617).

1. CUSTOMS DUTIES (§ 33*)—CLASSIFICATION—DRAWNWORK—EMBROIDERED.

Without proof that such is the case, it will not be held that, in Tariff Act July 24, 1897, c. 11, § 1, Schedule J, par. 339, 30 Stat. 181 (U. S. Comp. St. 1901, p. 1662), the term "embroidered" includes drawnwork articles to which ornaments have been added, at the open spaces at the corners where the threads have been withdrawn; the ornamentation consisting of a Maltese cross, or a wheel, or spider web, in conventional design.

[Ed. Note.—For other cases, see Customs Duties, Cent. Dig. §§ 88–96; Dec. Dig. § 33.*]

2. CUSTOMS DUTIES (§ 33*)—LACE—EMBROIDERY—LEGISLATIVE DISTINCTION.

Though, from an artistic point of view, lace may be embroidery, this consideration cannot control the dutiable status of imports, because in successive tariff acts Congress has made a distinction between the two.

[Ed. Note.—For other cases, see Customs Duties, Dec. Dig. § 33.*]

(Syllabus by the Court.)

Appeal from the Circuit Court of the United States for the Southern District of New York.

This cause comes here upon appeal from a decision of the Circuit Court, reversing a decision of the Board of General Appraisers (G. A. 6,452; T. D. 27,644), which sustained the collector's classification of certain importations under Tariff Act July 24, 1897, c. 11, § 1, Schedule J, pars. 339, 346, 30 Stat. 181 (U. S. Comp. St. 1901, pp. 1662, 1663)

J. Osgood Nichols, Asst. U. S. Atty.

Walden & Webster (W. Wickham Smith, of counsel), for appellees.

Before LACOMBE, COXE, and WARD, Circuit Judges.

PER CURIAM. The relevant paragraphs are:

"339. Laces, lace window curtains, tidies, pillow shams, bed sets, insertings, flouncings, and other lace articles; handkerchiefs, napkins, wearing apparel, and other articles, made wholly or in part of lace, or in imitation of lace; nets or nettings, veils and veilings, etamines, vitrages, neck rufflings, ruchings, tuckings, flutings, and quillings; embroideries and all trimmings, including braids, edgings, insertings, flouncings, galloons, gorings, and bands; wearing apparel, handkerchiefs, and other articles or fabrics embroidered in any manner by hand or machinery, whether with a letter, monogram, or otherwise; tamboured or appliquéed articles, fabrics or wearing apparel; hemstitched or

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

tucked flouncings or skirtings, and articles made wholly or in part of rufflings, tuckings, or ruchings; all of the foregoing, composed wholly or in chief value of flax, cotton, or other vegetable fiber, and not elsewhere specially provided for in this act, whether composed in part of india rubber or otherwise, sixty per centum ad valorem: Provided, that no wearing apparel or other article or textile fabric, when embroidered by hand or machinery, shall pay duty at a less rate than that imposed in any schedule of this act upon any embroideries of the materials of which such embroidery is composed."

"346. Woven fabrics or articles not specially provided for in this act, composed of flax, hemp, or ramie, or of which these substances or either of them is the component material of chief value, weighing four and one-half ounces or more per square yard, when containing not more than sixty threads to the square inch, counting the warp and filling, one and three-fourths cents per square yard; containing more than sixty and not more than one hundred and twenty threads to the square inch, two and three-fourths cents per square yard; containing more than one hundred and twenty and not more than one hundred and eighty threads to the square inch, six cents per square yard; containing more than one hundred and eighty threads to the square inch, nine cents per square yard, and in addition thereto, on all the foregoing, thirty per centum ad valorem: Provided, that none of the foregoing articles in this paragraph shall pay a less rate of duty than fifty per centum ad valorem. Woven fabrics of flax, hemp, or ramie, or of which these substances or either of them is the component material of chief value, including such as is known as shirting cloth, weighing less than four and one-half ounces per square yard and containing more than one hundred threads to the square inch, counting the warp and filling, thirty-five per centum ad valorem."

The merchandise consists of table covers, bureau covers, doilies, and similar articles of Japanese linen, which have been ornamented, usually with a single or double border, by drawing out certain of the warp or filling threads and tying and looping them with other threads to form figures, producing openwork effects. They are in all respects similar goods to those which were before this court in United States v. Ulmann, 139 Fed. 3, 71 C. C. A. 415, and were held to be dutiable, not under paragraph 339, but under paragraph 346. It was there pointed out that Congress for tariff purposes had in the act in question made a distinction between articles "made wholly or in part of lace, or in imitation of lace," and articles which "have drawn threads."

Upon the argument of the case at bar, counsel for the government did not make the contention that the articles were "lace or in imitation of lace," but insisted that they should be classified under paragraph 339 by virtue of the following clause therein contained:

"Wearing apparel, handkerchiefs and other articles or fabrics embroidered in any manner by hand or machinery, whether with a letter, monogram or otherwise."

It appears that when these borders are formed by drawing out threads there is necessarily left at each of the four corners an open space, which it is desirable to fill, both because it is more ornamental to fill it, and because, when filled, the article is less liable to distortion when in use. In filling one of these open spaces, the surrounding edge is first "stayed" by "button-hole stitching," so as to have a foundation for lines of additional thread which are drawn from corner to corner; and as one of the witnesses said:

"When we get the required number, which gives us something as a foundation, we can add line upon line, line upon line, and darn back and forth, as you would darn a stocking."

In the characteristic sample upon which the witnesses were particularly examined, these added ornaments, one in each of the four corners of each border, were designated as "X" (a conventional Maltese cross) and "Z" (a conventional wheel or spider web). Counsel for the government contends that X and Z, although superimposed, not upon any part of the fabric, but upon a vacant space, constitute embroidery, and that therefore the article has been "embroidered by hand with a letter, monogram, or otherwise." The difficulty with this contention, however, is that there is no testimony that X and Z are embroidery, which is not surprising, because the case was apparently tried on the theory, insisted upon by the government, that X and Z were "lace," or an "imitation of lace," and the point now urged seems to be an afterthought. The board reached the conclusion "that lace is embroidery." However this may be from an artistic point of view, we cannot accept it as controlling because in successive tariff acts Congress has made a distinction between the two. Without some proof that the application of X and Z to the flax articles ornamented with drawn threads has "embroidered" them, we cannot classify them under the clause relied upon.

The decision of the Circuit Court is affirmed.