FRANK & Co. *et al. v.* UNITED STATES (No. 1161).[1]

DRAWNWORK UNDER PARAGRAPH 349, TARIFF ACT OF 1909.

> On a review of the judicial decisions affecting the classification of articles similar to those of the importation, and of the legislative action following upon those decisions, it is clear that paragraph 349, tariff act of 1909, was intended to subject ornamental openwork to the same duty imposed by that act on laces, embroideries, and the like.

United States Court of Customs Appeals, May 18, 1914.

APPEAL from Board of United States General Appraisers, G. A. 7445 (T. D. 33262).

[Affirmed.]

*Curie, Smith & Maxwell (Thomas M. Lane* of counsel) for appellants.
*William L. Wemple,* Assistant Attorney General (*Thomas J. Doherty,* special attorney, of counsel), for the United States.

Before MONTGOMERY, SMITH, BARBER, DE VRIES, and MARTIN, Judges.

MARTIN, Judge, delivered the opinion of the court:

The merchandise involved in the present case consists of scarfs, squares, doilies, tidies, and similar articles of Japanese openwork or drawnwork, composed in chief value of flax. The articles are ornamented by having threads withdrawn from the woven fabric and the resulting open spaces partly filled with figures and designs formed by needlework, using for this purpose added or foreign threads—that is to say, threads other than those which composed the original fabrics. The ornamental figures and designs which are thus added to the fabrics produce lace-like effects in various forms, such as wheels, Maltese crosses, spider webs, and the like. Fabrics which are thus elaborated are indifferently called "drawnwork" or "openwork."

The appraiser returned the merchandise for duty at 60 per cent ad valorem under the specific provision for openwork contained in

[1] Reported in T. D. 34469 (26 Treas. Dec., 837).

paragraph 349 of the tariff act of 1909, and duty was assessed accordingly. The importers duly filed their protest against the assessment, claiming that the merchandise was not governed by the openwork provision of paragraph 349, but was dutiable at 45 per cent ad valorem as manufactures of flax not specially provided for under paragraph 358 of the same act. The issue thus joined was submitted upon evidence to the Board of General Appraisers and the protest was overruled by the board. The importers now appeal from that decision.

The following is a copy of the relevant parts of paragraph 349, thus called into question, with the openwork provision in italics:

349. Laces, lace window curtains, and all other lace articles; handkerchiefs, napkins, wearing apparel, and all other articles made wholly or in part of lace or laces, or in imitation of lace; nets, nettings, veils, veilings, neck rufflings, ruchings, tuckings, flutings, quillings, embroideries, trimmings, braids, featherstitch braids, edgings, insertings, flouncings, galloons, gorings, bands, bandings, belts, beltings, bindings, cords, ornaments, ribbons, tapes, webs, and webbings; wearing apparel, handkerchiefs, and other articles or fabrics embroidered in any manner by hand or machinery, whether with a plain or fancy letter, initial, or monogram, or otherwise, or tamboured, appliquéd, or scalloped, by hand or machinery, for any purpose, *or from which threads have been drawn, cut, or punched to produce openwork, ornamented or embroidered in any manner herein described, in any part thereof, however small;* hemstitched or tucked flouncings or skirtings; all the foregoing, composed wholly or in chief value of cotton, flax, or other vegetable fiber, or of cotton, flax, or other vegetable fiber and india rubber, or of cotton, flax, or other vegetable fiber, india rubber, and metal, and not elsewhere specially provided for in this section, sixty per centum ad valorem: * * *.

As has already been stated the articles at bar are ornamental openwork. They do not, however, bear any separate or independent ornamentation such as embroidery, tambouring, appliquéing, or scalloping, in addition to their ornamentation as openwork. This distinction serves to define the real issue between the parties, for the importers contend that paragraph 349, *supra*, does not include or govern articles or fabrics which are simply ornamental openwork, but applies to such openwork only when it is also ornamented by separated or independent embroidery, tambouring, appliquéing, or scalloping.

The importers base this contention upon the construction that the provision for openwork in paragraph 349, *supra*, is limited by the succeeding clause "ornamented or embroidered in any manner herein described," with the result that all openwork is excluded from the provision unless it is additionally ornamented or embroidered in some manner already specifically described in the paragraph. They contend that the paragraph names four "manners" of ornamentation, namely, embroidery, tambouring, appliquéing, and scalloping. They therefore argue that the limiting clause excludes from the provision all openwork articles or fabrics which do not also bear separate ornamentation of one or more of these four classes.

In considering this question the classification of openwork under earlier tariff revisions becomes important. Prior to the act of 1909 openwork was not named *eo nomine* in the corresponding lace paragraph of any tariff revision. In the tariff act of 1890, paragraph 373, laces, embroideries, and tamboured articles composed of flax were grouped together under a specific enumeration and were subjected to a higher rate of duty than that imposed upon manufactures of flax not specially provided for. In the tariff act of 1894, paragraph 276, a like disposition was made of laces, embroideries, and tamboured articles composed of flax. In the tariff act of 1897 laces, lace articles, and articles made wholly or in part of lace or in imitation of lace composed of flax were grouped with tamboured and appliquéd articles and were subjected to a higher rate of duty than that imposed upon manufactures of flax not specially provided for. It may be noted again that none of the foregoing acts contained an *eo nomine* provision in the lace paragraph for openwork composed of flax.

Under the foregoing provisions, in the absence of an *eo nomine* provision for ornamental openwork, the question arose whether on the one hand such articles were subject to the higher duty as articles of lace or in imitation of lace, or as embroidered articles, or whether on the other hand such articles were subject only to the lower duty which was imposed upon manufactures of flax not specially provided for. This question was largely one of fact to be decided upon the given record and the decisions upon it were not uniform.

Under the tariff act of 1890, in the case of Neuss, Hesslein & Co., decided in 1892, such articles were held by the board to be dutiable at the higher rate as embroidered articles (T. D. 13506). Under the same act the board held in 1893, in the Hensel case, that similar articles were dutiable under the higher rate as embroidered atricles (T. D. 14634). In the case of Neuss, Hesslein & Co. *v.* United States (142 Fed., 281), under the same act, the Circuit Court, Southern District of New York, held similar openwork articles composed of linen to be dutiable as embroidered articles. This case was decided in 1896.

Under the tariff act of 1897 there was a diversity of decisions upon this subject. Such articles were held by the board to be dutiable under that act as articles in imitation of lace (T. D. 21944); they were, however, held by the Circuit Court, Southern District of New York, upon the record in the case, not to be dutiable as articles in imitation of lace (131 Fed., 543). In the case of Beach *v.* Sharpe (154 Fed., 543), similar articles were held by the Circuit Court, Western District of Texas, to be dutiable under the act of 1897 as embroidered articles; they were held by the board to be dutiable under that act as either articles of lace or in imitation of lace or as embroidered articles, according to the character of the designs formed by the added threads (T. D. 27644); they were afterwards held by the board not to bo

dutiable as embroidered articles (T. D. 30442) nor as articles in imitation of lace, Abstract 15449 (T. D. 28181). The last two decisions of the board were entered in conformity with the decisions next hereafter cited.

Two other cases under the act of 1897 may be cited which are entitled to special mention. They are the Ulmann and Simon cases, which were decided by the Circuit Court of Appeals, Second Circuit, and both were reported before the enactment of the tariff act of 1909, as were also the other cases above cited.

In the case of United States v. B. Ulmann & Co. (139 Fed., 3), the Circuit Court of Appeals, just named, held upon the record that ornamental openwork articles were not dutiable as lace or articles in imitation of lace under the tariff act of 1897, but were dutiable under the provision for fabrics of flax not specially provided for.

In the case of United States v. J. R. Simon & Co. (169 Fed., 106), the same court held upon the record that similar articles were not dutiable as embroidered articles, leaving them again to be assessed under the general provision for fabrics of flax not specially provided for.

At the enactment of the tariff act of 1909 the two decisions last named were the highest judicial interpretations of the provision in question as it appeared in the tariff act of 1897.

It may be noted that during this time plain or unornamental openwork had repeatedly been held to be dutiable as manufactures of linen or cotton not specially provided for and not as lace or articles in imitation of lace or as embroidered articles, and that the Government had apparently acquiesced in this conclusion.

In Notes on Tariff Revision (438, 439), a review was given of the litigation relating to ornamental openwork up to the time when that report was prepared, and the following statement was made upon the subject under the head of "Comments and Suggestions:"

This drawnwork, as it is called, belongs in the same class of articles as laces, which it resembles very strongly and is used in much the same way for producing ornamental effects in wearing apparel, table covers, bedspreads, and a multitude of articles which are ornamented with lace or made in part of lace. The term drawnwork appears to be well established, and it is believed that a specific provision for drawnwork incorporated in this paragraph would be an effective remedy for the present unsatisfactory state of the law.

The foregoing references are not intended to imply that prior to the enactment of the tariff act of 1909 the Government had formally acquiesced in the decisions against the assessment of such ornamental openwork as articles in imitation of lace or as embroidered articles, nor that the issues of fact made in the cited cases had up to that time been finally settled or foreclosed by the records which had been made up in those cases. Nevertheless it appears that at the time of the enactment of the tariff act of 1909 the two decisions of the Cir-

cuit Court of Appeals were the latest and highest judicial expressions upon the subject at issue; and that it was suggested to Congress in Notes on Tariff Revision that an *eo nomine* provision for such openwork should be incorporated in the lace paragraph in the revision then in preparation in order to end the controversy by making such openwork dutiable at the same rate as lace. The statement that such openwork "belongs in the same class of articles as laces, which it resembles very strongly," is certainly correct, for an inspection of the samples now before the court discloses that the ornamental figures and designs which are superimposed upon the articles are very similar to lace in construction and effect.

In the light of this history Congress, in the act of 1909, added to the corresponding lace paragraph of that act the *eo nomine* provision now in question for " articles or fabrics * * * from which threads have been drawn, cut, or punched to produce openwork."

The foregoing recital lends an overwhelming probability to the theory that Congress intended the new provision for openwork to have the effect of adding such articles to the lace paragraph as a response to the decisions reported in the foregoing cases and the suggestion made in Notes on Tariff Revision. In other words, since Congress was fully advised that ornamental openwork, as such, was not included *eo nomine* within the lace paragraph as written in the act of 1897, and that the court decisions had denied such articles classification under that paragraph, it is reasonable to conclude that Congress would not have added an *eo nomine* provision for such openwork to the paragraph except for the purpose of bringing the described articles within its provisions. It was concededly unnecessary to add such an enumeration for the purpose of bringing into the paragraph such ornamental openwork as was also ornamented by additional embroidery, tambouring, or appliquéing, for all such articles whether openwork or not were already admittedly within the terms of the paragraph under those enumerations. Nor did such embroidery, tambouring, appliquéing, or scalloping bear any essential relation to openwork as such. Under these circumstances it must be believed that Congress intended to act in accordance with the suggestion contained in Notes on Tariff Revision, above set out, and accordingly incorporated " a specific provision for drawnwork" in the new paragraph as an effective remedy for " the present unsatisfactory state of the law." According, however, to the contention of the importers Congress first enlarged the terms of the relevant paragraph so that it would include such openwork *eo nomine* in accordance with the suggestion, and thereupon immediately rendered the new provision entirely nugatory by adding a clause which deprived the provision of application to any kind of openwork as such. In other words, "the unsatisfactory state of the law" was allowed to

continue just as it was, notwithstanding the addition of an *eo nomine* enumeration of openwork in the paragraph. It can hardly be believed that such a construction reaches the true legislative purpose expressed in the enactment.

A review of the history of the provision in question at its enactment will sustain this conclusion. It passed the House in the following form:

345. * * * Wearing apparel, handkerchiefs, and other articles or fabrics embroidered in any manner by hand or machinery, whether with a plain or fancy letter, initial, or monogram, or otherwise, or tamboured, appliquéd, scalloped, or hemstitched, by hand or machinery, or stitched in any manner for the purpose of ornamentation or embellishment, or from which threads have been drawn, cut, or punched to produce openwork; * * *.

The provision passed the Senate in the following form:

345. * * * Wearing apparel, handkerchiefs, and other articles or fabrics embroidered in any manner by hand or machinery, whether with a plain or fancy letter, initial, or monogram, or otherwise, or tamboured, appliquéd, or scalloped, by hand or machinery, or from which threads have been drawn, cut, or punched to produce *ornamental* openwork, except hemstitching; * * *.

The difference just stated went to conference and the following appears in the conference report upon the subject:

Amendment numbered 528: That the House recede from its disagreement to the amendment of the Senate numbered 528, and agree to the same with an amendment as follows: In lieu of the matter inserted by said amendment insert the following: " * * * Ornamented or embroidered in any manner herein described, in any part thereof, however small; hemstitched or tucked flouncings or skirtings;" and the Senate agree to the same.—Congressional Record, 61st Cong., 1st sess. (vol. 44, pt. 5, p. 4764).

The provision was then enacted in the form first above copied in this decision.

It will be seen therefore that the House grouped all openwork, whether ornamental or plain, within the lace paragraph and subjected it all to the same high rate of duty as laces, embroideries, and tamboured or scalloped articles. The Senate, however, restricted the provision to "ornamental openwork" only. The provision thus went to conference carrying with it the expressed purpose of the House to cover thereby all openwork as such, and the expressed purpose of the Senate to cover thereby only ornamental openwork as such. Can it be believed that the conference report was intended or understood to mean an abandonment of both of these purposes and the enactment of a provision which did not cover any openwork at all as such? For, after all, that is the contention of the importers, namely, that openwork as such, whether plain or ornamental, is not included within the disputed provision, and that the provision includes only such openwork fabrics as are otherwise ornamented in such a manner as would bring them within the paragraph regardless of their character as openwork.

It is more reasonable to believe that the legislative purpose was to adopt the Senate amendment, which excluded plain openwork from the provision, and limited its application to ornamental openwork only, but provided at the same time that the higher rate should apply to such ornamental openwork as well as embroidered, tamboured, appliquéd, and scalloped articles regardless of the small extent of such ornamentation upon any given article. This view is consistent with the following explanation of the conference report which was submitted to both Houses:

Amendments 523 to 535. Laces and articles embroidered and decorated have been classified and those inexpensively produced taken out of this paragraph, so that they fall within other classifications at lower rates of duty.—Congressional Record, 61st Cong., 1st sess. (vol. 44, pt. 5, p. 4655).

In view of the foregoing considerations the court is convinced that it was the legislative purpose to correct what was believed to be an infirmity of the act of 1897 by subjecting ornamental openwork to the same duty as was borne by laces, embroideries, and the like, which such ornamental openwork so nearly resembles in structure and use; and that the *eo nomine* enumeration in question was added to the relevant paragraph to that end. The modifying clause "ornamented or embroidered in any manner herein described, in any part thereof, however small," was intended to signify that such ornamented fabrics as would otherwise come within the provisions of the paragraph should not escape assessment thereunder because of the small part of the same which might be composed of the ornamentation in question. This, too, had been a subject of much litigation in the past, and the clause under consideration was designed to set the question at rest.

Nor is this interpretation inconsistent with the grammatical construction of the provision in question. For thereby the clause "ornamented or embroidered in any manner herein described, in any part thereof, however small," is made to apply alike to articles or fabrics embroidered, (articles or fabrics) tamboured, (articles or fabrics) appliquéd, (articles or fabrics) scalloped, and (articles or fabrics) from which threads have been drawn, cut, or punched to produce openwork, from each and all of which enumerations the modifying clause is separated by the punctuation of a comma only. It may be objected that this construction, if literally carried out, would bring plain as well as ornamental openwork within the higher duty prescribed by the paragraph, but observing the use made of the term *ornamented* in the modifying clause and remembering the history of the provision as above recited, it is believed that this result does not follow.

It may be remarked that goods identical in character with those at bar were before this court upon a similar issue in the case of Frank & Co. *v*. United States (3 Ct. Cust. Appls., 216; T. D. 32534), but the issue in that case was decided solely upon the weight of the evi-

dence, and the question above discussed was not reached by the court upon that record. It may also be noted that the case of Gardner & Co. v. United States (2 Ct. Cust. Appls., 477; T. D. 32228), relating to scalloped articles, presented a question under the same paragraph so analogous to the present question that it may be cited as an authority upon the principle herein involved.

The decision of the board is *affirmed.*

---

### DISSENTING OPINION.

DE VRIES, Judge: I am unable to concur in the majority opinion. That opinion adopts as the line of dutiable demarcation in drawn or open work the very uncertain criterion of whether or not the article is "ornamental." Aside from the very capricious character of such a standard its employment was expressly and affirmatively rejected by the Congress, and, in my opinion, one of certain, definite trade understanding written in the law in lieu thereof, to wit, that the goods should of necessity be found to be ornamented or decorated wholly or in part by tambouring, appliqué, embroidering, or scalloping.

It seems plain that the court here adopts a standard which was expressly rejected by the Congress. The legislative and judicial history which prompted this legislation had distinguished two distinct classes of drawn or open work, as follows:

1. Drawnwork formed solely by withdrawing threads or cutting or punching, and into which no extra or added threads have been introduced save to properly adjust the remaining threads not drawn from the fabric or bind or otherwise finish the drawn, cut, or punched areas, and which added threads do not *per se* form any figure or design. This class was held exempt from the higher rates of duty.

2. Drawnwork formed by withdrawing threads or cutting or punching and into or upon which extra or added threads have been introduced by which *per se* some figure or design is formed in or upon the fabric. This was the class the subject of extended litigation.

There criteria were founded upon definite, tangible, physical effects determinable alike by all concerned, while what is or is not ornamental would be vague and uncertain, differing according to the judgment of different appraisers and importers.

The paragraph evolved as a result of long litigation and legislative consideration in so far as pertinent reads:

349. Laces, lace window curtains, and all other lace articles; handkerchiefs, napkins, wearing apparel, and all other articles made wholly or in part of lace or laces, or in imitation of lace; * * * wearing apparel, handkerchiefs, and all other articles or fabrics embroidered in any manner by hand or machinery, whether with a plain or fancy letter, initial, or monogram, or otherwise, or tamboured, appliquéd, or scalloped, by hand or machinery, for any purpose, or from which threads have been drawn, cut, or punched to produce openwork, ornamented or embroidered in any manner herein described, in any part thereof, however small; * * *.

It would seem that if that view must prevail the context of the paragraph read in the light of its judicial and legislative history would well warrant the adoption of this well-settled line of demarcation.

That the dutiable test adopted by the court, of whether or not drawn or open work was ornamental, was not only not the intention but expressly repudiated by Congress is demonstrable.

While suggestions made to Congress in Notes on Tariff Revision (438–439), quoted in the majority opinion, observed these distinctions, 1 and 2 *supra*, they were not observed by the responsive paragraph of the bill as reported into and passed by the House, the language of which would include both said classes of drawnwork. In so far as pertinent it read:

345. Laces, lace window curtains, and all other lace articles; handkerchiefs, napkins, wearing apparel, and all other articles made wholly or in part of lace or laces, or in imitation of lace; * * * wearing apparel, handkerchiefs, and other articles or fabrics embroidered in any manner by hand or machinery, whether with a plain or fancy letter, initial, or monogram, or otherwise, or tamboured, appliquéd, scalloped, *or hemstitched*, by hand or machinery, *or stitched in any manner for the purpose of ornamentation or embellishment*, or *from which threads have been drawn, cut, or punched to produce openwork;* * * *.

Obviously this language would include class 1 of drawnwork, which has therein threads of adjustment and hemstitching in finishing the parts of the fabrics cut or drawn or punched, not alone in adjusting the remaining undrawn threads into fancy effects, but in protecting and probably embellishing the edges left unfinished by the drawing, cutting, or punching.

As reported in the Senate this paragraph retained the number of 345 and in so far as pertinent was amended to read as follows:

345. Laces, lace window curtains, and all other lace articles; handkerchiefs, napkins, wearing apparel, and all other articles made wholly or in part of lace or laces, or in imitation of lace; * * * wearing apparel, handkerchiefs, and other articles or fabrics embroidered in any manner by hand or machinery, whether with a plain or fancy letter, initial, or monogram, or otherwise, or tamboured, appliquéd, *or* scalloped, by hand or machinery, or from which threads have been drawn, cut, or punched to produce *ornamental* openwork, *except hemstitching;* * * *.

In this form the paragraph passed the Senate and went to conference.

The amendments thus made by the Senate are instructive. There is a perfectly apparent purpose of restoring the scope of the paragraph so that it would not include drawnwork of class 1, but would include that of class 2, thus observing their clear distinction noted in G. A. 6452 and other decisions which conformed with the long-continued customs practice.

In effecting that purpose the Senate struck out the words "or hemstitched," thereby relieving that class of simply constructed goods from this paragraph. What are "hemstitched" fabrics? They are more frequently a class of fabrics with drawn or punched threads, the drawn or punched parts of which have introduced

therein threads of adjustment perfecting and embellishing the same but not *per se* making a figure. By this amendment the Senate struck from the paragraph fabrics named in the paragraph as "hemstitched." This seems an infallible key to the Senatorial purpose. The Senate then proceeded to strike from the paragraph all other language of similar general scope by eliminating the words "or stitched in any manner *for the purpose of ornamentation* or embellishment." *Plainly every ornamented or embellished article or fabric by stitching was not to be included herein.* The Senate then proceeded to add the word "ornamental" before the word "openwork," thereby confining the scope of the "ornamental" test in the paragraph to drawnwork alone.

In this imperfect and indefinite state the paragraph went to conference, from which it emerged and became a law further changed to its present form as and numbered paragraph 349, which in these particulars reads:

349. Laces, lace window curtains, and all other lace articles; handkerchiefs, napkins, wearing apparel, and all other articles made wholly or in part of lace or laces, or in imitation of lace; * * * wearing apparel, handkerchiefs, and all other articles or fabrics embroidered in any manner by hand or machinery, whether with a plain or fancy letter, initial, or monogram, or otherwise, or tamboured, appliquéd, or scalloped, by hand or machinery, for any purpose, or from which threads have been drawn, cut, or punched to produce openwork, *ornamented or embroidered in any manner herein described, in any part thereof, however small;* * * *.

As coming from conference we find the paragraph, without infracting the rule of Congress that a conference result must not introduce a new subject of legislation, nevertheless more clearly and aptly expressing a precise purpose. The changes indicating that purpose are very suggestive. The word "ornamental" occurring before openwork was struck out. The words "not hemstitched" added by the Senate after the word "openwork" were likewise struck out. The words substituted were those following "openwork" as follows: "Ornamented or embroidered in any manner herein described, in any part thereof, however small." These words were substituted for "ornamental."

The substituted phrase limits the classes of included ornamentation to those "in any manner *herein described*" which is tambouring, scalloping, appliqué, or embroidery, all *superimposed* by adding an extra thread to form independently or upon the fabric a figure *per se*. The purpose of the Senate and conference to eliminate hemstitched goods from this provision is obvious. If these words do not modify "openwork," the conference defeated this very patent object, for otherwise such goods would fall within the described "openwork." The conference substituted the language for that of similar though more extended effect "ornamental" as a term modifying "openwork" by placing this phrase immediately after that word. It could not

well or grammatically have been otherwise placed and by all the rules of grammar and legal construction should be held to modify "openwork."

If it does modify and limit openwork, only openwork of the classes therewithin are so dutiable. How can it be said after reviewing this precise and studied effort of the Senate and conference to limit the paragraph by *expressly striking out* "ornamental" to say that it meant "ornamental"? There would seem to be no warrant in the statute or its history where Congress expressly struck out "ornamental" as modifying "openwork" and substituted therefor modifying words expressing a limited number of kinds of ornamentation, that Congress meant to include *all* kinds and methods of ornamentation. It may be true that in so doing Congress defeated what otherwise may be *inferred* as its purpose, but in the presence of plain unmistakable language it is for the courts to follow such rather than inferences of a purpose not expressed, but on the contrary negatived by the congressional words. In my view, whatever construction may be put upon other language of the paragraph, whatever transposition may be made of the words of the statute, we must under all rules hold that the words "ornamented or embroidered in any manner herein described" modify "openwork." We can not under any rule deny that modification, and being so unable I can not agree that the phrase includes all kinds of "ornamental" openwork.