## LANG *v.* UNITED STATES (No. 1877).[1]

1. CONSTRUCTION—DRAWNWORK, PLAIN AND ORNAMENTAL—LACE—LEGISLATIVE, ADMINISTRATIVE, AND JUDICIAL HISTORY.

For 20 years prior to the tariff act of 1913 and during the life of four different tariff acts, plain drawnwork goods were not classified as articles of lace or articles in part of lace or in imitation of lace, and during that period the only drawnwork articles which were so classified by the customs officers or by the Board of United States General Appraisers were those in which additional threads were employed, not only to group the loose threads together but to form independent figures and designs. The tariff act of 1913 preserves the distinction between plain and ornamental drawnwork and substantially adopts the language used by the Board of United States General Appraisers and the courts in describing ornamented drawnwork. To that language should be given the same meaning accorded to it by the board and the courts.

2. CONSTRUCTION, PARAGRAPH 358, TARIFF ACT OF 1913—PLAIN DRAWNWORK.

Plain drawnwork is not classifiable under paragraph 358, tariff act of 1913.

3. SCARFS OF HEMSTITCHED DRAWNWORK.

Cotton bureau scarfs, within the popular understanding of drawnwork and ornamented with two rows of hemstitching around the margin, the threads used other than those of the fabric itself performing no office except that of strengthening the corners of the drawnwork and grouping the loose threads together, are plain drawnwork, and not dutiable under paragraph 358, tariff act of 1913, "woven fabrics or articles from which threads have been omitted, drawn, punched, or cut, and with threads introduced after weaving forming figures or designs not including straight hemstitching." They are dutiable as articles of cotton cloth under paragraph 266.

### United States Court of Customs Appeals, May 7, 1918.

APPEAL from Board of United States General Appraisers, Abstract 41285.

[Reversed.]

*Allan R. Brown* for appellant.

*Bert Hanson*, Assistant Attorney General (*Frank P. Wilson* and *Martin T. Baldwin*, special attorneys, of counsel), for the United States.

[Oral argument Apr. 16, 1918, by Mr. Brown and Mr. Wilson.]

Before MONTGOMERY, SMITH, BARBER, DE VRIES, and MARTIN, Judges.

SMITH, Judge, delivered the opinion of the court:

Certain cotton bureau scarfs classified by the collector of customs at the port of New York as woven articles, composed of cotton from

---

[1] T. D. 37642 (34 Treas. Dec., 432).

which threads were omitted, drawn, punched, or cut, and having threads introduced after weaving, forming figures or designs, were assessed for duty at 60 per cent ad valorem under that part of paragraph 358 of the tariff act of 1913 which reads as follows:

358. * * * Woven fabrics or articles from which threads have been omitted, drawn, punched, or cut, and with threads introduced after weaving, forming figures or designs not including straight hemstitching; * * * 60 per centum ad valorem.

The importer protested against the classification and assessment of the collector on various grounds, but that on which he really relied was the claim that the goods were dutiable at 30 per cent ad valorem as articles made from cotton cloth under paragraph 266. The Board of General Appraisers overruled the protest and the importer appealed.

The scarfs in controversy are drawnwork articles from which warp threads on the sides and weft threads on the ends have been withdrawn, the loose threads remaining being bound together by an additional thread in such a way as to leave irregular open spaces, the size of which is determined by the number of threads withdrawn and by the number of loose threads bound together.

The goods are not embroidered in any way as that term is commonly understood, and the additional thread performs no other office than that of loosely gathering together the free threads and roughly stitching some of the edges of the corner spaces to strengthen the fabric and probably to prevent unraveling. Two rows of hemstitching, placed about an inch apart, embellish the margin of the fabric. The hemstitching is accomplished by pulling out the warp threads on the sides and the weft threads on the ends, and then by means of an additional thread drawing compactly together not only the released threads of the fabric but also some of the unreleased threads at the top and bottom of the open spaces thus produced.

The importer contends that the importation is not within the intent and meaning of paragraph 358, inasmuch as the additional thread does not per se form any figure or design and accomplishes no other purpose than that of producing plain drawnwork and figures and designs peculiar to plain drawnwork.

The Government on its part contends that the goods are within and are covered by the language of paragraph 358 inasmuch as a figure or design is produced by binding together loosened threads of the fabric with a thread not belonging to the weave.

If the contention of the importer be sustained all plain drawnwork articles must be excluded from the operation of paragraph 358, and if that of the Government is upheld all drawnwork, whether plain or ornamental, with the exception of straight hemstitching, must be subjected to the duty of 60 per cent ad valorem by that paragraph provided.

Apparently, therefore, we are again brought to the consideration of a question which in one form or another has vexed the customs tribunals for more than a quarter of a century.

Prior to the tariff act of 1909, no drawnwork articles were provided for by name, with the exception of hemstitched flouncings or skirtings enumerated in paragraph 339 of the tariff act of 1897, and hemstitched handkerchiefs enumerated in paragraph 373 of the tariff act of 1890, and in paragraphs 313, 345, and 388 of the tariff act of 1897.

Hemstitched trimmings were classified under the act of 1890 as trimmings. In re Chas. E. Lench, G. A. 2367 (T. D. 14609), December 12, 1893. Under the same act hemstitched edgings were returned by the appraiser as cotton embroidery and were held by the board to be trimmings. In re John Pullman & Co., G. A. 3085 (T. D. 16206), May 21, 1895. Cotton bureau covers and like articles ornamented with fancy work produced in part by drawing out the threads of the fabric and in part by binding the remaining threads into groups by the use of a needle and thread, so as to form open spaces, were held to be manufactures of cotton dutiable under paragraph 355 of the tariff act of 1890, and not manufactures of cotton, embroidered, dutiable under paragraph 373 of that act as found by the collector. Meyer *v.* United States (90 Fed., 803), December 16, 1898.

Hemstitched fabrics in strips were not classified by the collector under the lace and embroidery paragraph of the act of 1897, but as woven fabrics weighing $4\frac{1}{2}$ ounces or more per square yard, dutiable under paragraph 346 of that act. In re Dunham, Buckley & Co. et al., G. A. 5641 (T. D. 25195).

Remembering that paragraph 373 of the act of 1890 provided for laces, embroideries, and articles embroidered by hand and machinery, and that paragraph 339 of the act of 1897 provided for laces, embroideries, and articles embroidered or made in part of lace or in imitation of lace, it may be fairly concluded that by virtue of the decisions cited *plain* drawnwork was from 1890 to 1909 excluded from the category of laces or embroideries and from that of embroidered articles and articles made wholly or in part of lace or in imitation of lace. When it came, however, to that class of drawnwork in which the additional thread was not only used for the purpose of drawing the loose threads together to form the open spaces but also for the purpose of forming with it designs other than those created by grouping the loose threads, the Board of General Appraisers agreed with the collector of customs that they should be classified either as embroidered articles or as articles made in part of lace or in imitation of lace.

General Appraiser Tichenor, in the Pacific Commercial Co. case, G. A. 4587 (T. D. 21716), pointed out that there were two classes of

drawnwork, and held that although geometrical openwork produced in part by drawn threads bore a remote resemblance to the more common inferior styles of lace, it could not be classified as an article in part of lace or in imitation of lace, but that drawnwork containing figures quite closely resembling those of the several styles of lace came directly within the descriptive phrase "imitation of lace," and were dutiable as articles in imitation of lace under paragraph 339 of the act of 1897. Holding to that view, the same general appraiser in T. D. 21944 decided that doilies, napkins, tray cloths, table and bureau covers, pillow shams, and bedspreads composed of flax and ornamented by drawing, grouping, intertwining, interlacing, and otherwise manipulating the warp and weft threads and by knotting or looping them in place and by the use of threads other than those of the warp and weft, so amplifying and perfecting the work as to produce a variety of delicate and beautiful openwork and figure designs in the form of conventional "spider webs," "butterflies," "stars," "Maltese crosses," "scrolls," "rings or wheels," closely resembling laces bearing the same names, were dutiable either as embroidered articles or as articles in part of lace or in imitation of lace.

The decisions of General Appraiser Tichenor were followed by the board in the matter of the protest of J. R. Simon & Co., G. A. 5329 (T. D. 24373), which involved the classification of goods similar to those considered in T. D. 21944. The decision reached in the Simon case upon review by the Circuit Court for the Southern District of New York was reversed on the ground, first, that there was not a particle of testimony to support the finding of the board; second, that a mere inspection of the articles confirmed the testimony that they were not imitations of lace; and, third, that drawnwork articles and articles wholly or in part of lace were different things, inasmuch as Congress had distinguished between lace articles and drawnwork articles by providing separately for articles wholly or in part of lace and for hemstitched handkerchiefs and handkerchiefs with drawn threads. Simon & Co. et al. v. United States (131 Fed., 649).

The Circuit Court was affirmed by the Circuit Court of Appeals for the Second Circuit, which, speaking through Lacombe, Judge, took occasion to say that not only was there no evidence tending to show that the ornamentation on the articles was in imitation of lace, but that there was direct testimony to the contrary. The Circuit Court was sustained on the further ground that from the act itself it appeared that Congress understood that ornamentation by drawing threads was something distinct from imitations of lace. United States v. Simon & Co. et al. (139 Fed., 3). Notwithstanding the decision of the Circuit Court and the Circuit Court of Appeals, the same issue was again presented to the Board of General Appraisers

in the matter of the protest of J. R. Simon & Co., G. A. 6452 (T. D. 27644). That case involved drawnwork goods more or less elaborately ornamented with figures or designs other than those made by grouping the loose threads of the fabric. In that case the board, speaking through General Appraiser De Vries, reviewed very fully indeed the whole history of drawnwork, embroideries, and laces, as well as the evidence and testimony submitted, and again ruled that drawnwork articles in which the additional threads by themselves formed a figure or design were something more than plain drawnwork. The board found that by means of the additional threads the drawnwork had been embellished with embroidery work and figures or designs which were lace, imitation lace, or in imitation of lace. Accordingly, the goods were held to be dutiable under the appropriate lace and embroidery paragraph of the tariff act of 1897.

Discussing the distinction between plain drawnwork and drawnwork ornamented with figures or designs made by threads other than those of the fabric, General Appraiser De Vries said:

Where the threads are withdrawn from the woven fabric and others introduced, forming out of the remaining warp and weft or either such threads some figure, but making no figure out of the threads alone thus introduced, such an article is and continues to be one with drawn threads only; but where out of the threads introduced and by the manipulation of these threads alone a figure is formed, which figure is a lace figure or is in imitation of some lace figure or effect, such an article is in part of lace or in part in imitation of lace; when, however, such figure formed of such extra threads alone is not in imitation of any lace figure or effect, but is ornamental, such is an embroidery, and the article is to that extent embroidered.

In support of the conclusion reached by the board all was said that could have been said, nevertheless, its decision was reversed on May 22, 1904, by the Circuit Court without opinion (T. D. 29017), and a year later the reversal was affirmed by the Circuit Court of Appeals. United States *v.* J. R. Simon & Co. (169 Fed., 106).

As a result of these decisions the vegetable-fiber lace paragraph of the act of 1897 was amended by the corresponding paragraph of the tariff act of 1909 so as to include "articles or fabrics from which threads have been drawn, cut, or punched to produce openwork, ornamented or embroidered in any manner herein described, in any part thereof, however small." This court held in Frank *v.* United States (5 Ct. Cust. Appls., 273; T. D. 33262) that articles having threads withdrawn therefrom with open spaces filled with "wheels," "Maltese crosses," "spider webs," and like figures and designs, *made with threads other than those composing the original fabric,* were within the language of that amendment and dutiable as provided by the paragraph of which it was a part. We may say, therefore, that for 20 years prior to the present tariff law, and during the life of four different tariff acts, plain drawnwork goods were not classified as articles of lace or articles in part of lace or in imitation of lace, and

that during that period the only drawnwork articles which were so classified by the customs officers or by the board were those in which additional threads were employed not only to group the loose threads together but to form independent figures and designs.

The merchandise under consideration comes within the popular understanding of drawnwork, and inasmuch as the extra threads perform no other office than that of strengthening the corners of the drawnwork and of grouping the loose threads together, it is plain drawnwork as that term is defined by the decisions hereinbefore cited.

The Government, however, contends that the lace and embroidery paragraph of the tariff act of 1909 was so changed by the tariff act of 1913 that for classification purposes the distinction between plain and ornamental drawnwork no longer exists, and that all drawnwork whether plain or ornamental must now be subjected to the same duty as that on articles wholly or in part embroidered or wholly or in part of lace, or imitation lace, or in imitation of lace.

We do not think that the change in the language referred to justifies the contention. While the tariff act of 1913 was under consideration Congress knew that there was such a thing as plain drawnwork and such a thing as ornamental drawnwork, and if it was the legislative intention to abolish the previous long established distinction between the two classes of fabrics that purpose could have been easily and unmistakably accomplished either by providing in the lace paragraph for all drawnwork articles whether plain or ornamental or by incorporating therein the provision for " articles or fabrics * * * from which threads have been drawn, cut, or punched to produce openwork," which was proposed by the House and rejected by the Senate in 1909. Not only was neither of these provisions enacted but the Senate, just as it did in 1909, manifested its fixed intention to exclude plain drawnwork from the operation of paragraph 358 by refusing to pass the following House provision which would have effected, and was evidently designed to effect, the same result:

Woven fabrics or articles from which threads have been omitted, drawn, punched, or cut, leaving open spaces in which figures or designs are formed by threads other than the threads of the fabric alone or in combination with the threads of the fabric, not including hemstitching or spokestitching.

The provision substituted by the Senate for the House provision and subsequently enacted into law substantially adopted the language used by the board and the courts in describing ornamented drawnwork, and to that language should be given the same meaning as that accorded to it by the board and the courts unless we can say that the introduction of a comma after the word "weaving" brought about a change in meaning by relating the words "forming figures

or designs" back to the phrase "woven fabrics, or articles from which threads have been omitted."

In order to say that, however, we must also say that the Senate deliberately ignored the House provision, which clearly included both plain and ornamented drawnwork, and sought to accomplish the very same result by punctuating into a phrase a signification different from that which marked its use by the judicial tribunals. Moreover, if the intention of the Senate was that contended for by the Government, it was entirely unnecessary to punctuate the words "forming figures or designs" out of the modification of their immediate antecedent "with threads introduced after weaving," inasmuch as both kinds of drawnwork would have been fully covered by omitting altogether the expression "forming figures or designs," and by allowing the provision to stand as follows: "Woven fabrics or articles from which threads have been omitted, drawn, punched, or cut, and with threads introduced after weaving." The best that can be said of the effect of the comma is that it leaves the interpretation of the law open to doubt, and the benefit of that doubt must, of course, under the decisions be given to the importer.

It may be argued that if there was a legislative intent to provide in paragraph 358 of the tariff act of 1913 for ornamented drawnwork only, then there was no necessity for changing the language of paragraph 349 of the act of 1909, which, as held by this court, provided for that very class of goods. That argument, however, loses its force completely when we consider that the Senate, which was responsible for the law as it now stands, was not called upon to deal with paragraph 349 at all, but with the House provision which had amended and broadened that paragraph so as to cover plain as well as ornamented drawnwork.

The fact that "straight hemstitching," a kind of plain drawnwork, is excluded from the operation of paragraph 358, suggests at once the query as to whether the making of that exception does not necessarily imply a purpose to include all drawnwork not excepted. No weight, however, can be given to the exception when it is remembered that the House excluded from the lace paragraph *all hemstitching* and *spokestitching*, the latter being a class of ornamentation largely formed by using additional threads alone. The Senate declined to except all hemstitching and "spokestitching" and limited the exception to straight hemstitching only, and that limitation was strictly in line with the Senate's policy adopted by it in 1909 of subjecting to the lace duty all drawnwork having figures or designs formed by threads other than those of the weave.

In accordance with these views the decision of the Board of General Appraisers is *reversed*.