The judgment of the United States Customs Court is *affirmed*.

UNITED STATES *v.* R. E. MACKSOUD, CENTRAL MADERIA CORP. (No. 4235)[1]

United States Court of Customs and Patent Appeals, December 26, 1939

*Webster J. Oliver*, Assistant Attorney General (*Richard E. Fitzgibbon*, special attorney, of counsel), for the United States.

*James W. Bevans* for appellee.

[Oral argument October 3, 1939, by Mr. Fitzgibbon and Mr. Bevans]

Before GARRETT, Presiding Judge, and BLAND, HATFIELD, LENROOT, and JACKSON, Associate Judges

GARRETT, Presiding Judge, delivered the opinion of the court:

The Government here appeals from a judgment of the United States Customs Court, Second Division, sustaining protests of the importers

[1] C. A. D. 87.

in suits brought by them to recover certain duties assessed and collected by the Collector of Customs at the port of New York upon merchandise consisting of napkins, doilies, bureau scarfs, tablecloths, and the like, made of flax. The importations were made while the Tariff Act of 1922 was in effect and are governed by that act.

Numerous protests are involved, the cases having been consolidated for trial. A single protest, No. 310859–G/28845, with the collector's report thereon, was included in the printed record. It is agreed that this is typical of all the other protests and reports enumerated in a schedule accompanying the assignments of error.

The report of the collector does not itself show the particular paragraph under which the merchandise was classified by him but the appraiser's answer indicates, and counsel for the parties agree, that it was made under that part of paragraph 1430 of the act reading:

* * * all fabrics and articles * * * from which threads have been omitted, drawn, punched, or cut, and with threads introduced after weaving to finish or ornament the openwork, not including straight hemstitching; * * * 75 per centum ad valorem.

Appellees claimed the towels and napkins to be classifiable under paragraph 1014 of the act and assessable at the appropriate rate, according to the thread count, therein provided. All the other merchandise was claimed to be classifiable under paragraph 1021 of the act with a duty assessment of 40 per centum ad valorem. The pertinent portions of those paragraphs read:

PAR. 1014. Towels and napkins, finished or unfinished, composed wholly or in chief value of flax, hemp, or ramie, or of which these substances are, or any of, them is, the component material of chief value, not exceeding one hundred and, twenty threads to the square inch, counting the warp and filling, 55 per centum ad valorem; exceeding one hundred and twenty threads to the square inch, counting the warp and filling, 40 per centum ad valorem * * *.

PAR. 1021. All woven articles, finished or unfinished, and all manufactures of vegetable fiber other than cotton, or of which such fibers or any of them is the component material of chief value, not specially provided for, 40 per centum ad valorem.

The sole issue involved is whether the openwork in the imported articles consists of straight hemstitching. If it be so held, it is agreed that the collector's classification and assessment were erroneous; if not, it is agreed that the claims of the importers should be overruled.

Before describing in detail the merchandise involved some analysis of the provision in paragraph 1430, *supra*, under which it was classified is deemed proper; also certain judicial decisions will be referred to prior to giving the description.

The key term of the provision may be said to be the word "openwork," of course, as applied to the fabrics and articles embraced in the paragraph. The openwork may be produced in the fabric by

different methods. Threads may be omitted in weaving the article or may be drawn after it is woven. Also, an opening may be produced by punching a hole in the article or by cutting threads. The primary purpose of creating such openings is doubtless to ornament the article but the particular ornamentation referred to in the provision involved is not of the *article* but of the *openwork* in the article. After the openings are created, threads may be introduced about the openings. Obviously, such threads are introduced "after weaving" no matter which of the named methods is used in creating the opening. If they are introduced to finish or ornament the *opening* in a manner other than by straight hemstitching the fabrics and articles containing the openwork fall within the provision, but if the method is merely one of straight hemstitching they are not included within the provision.

So far as we are advised, "straight hemstitching" has never been defined, judicially or legislatively, as an abstract term. Numerous cases have been before this and other courts in which the term was involved but in each instance the case was determined upon its own particular facts, the stitching as shown in sample being looked to and analyzed in the light of dictionary and technical definitions, and, not infrequently, in the light of expert testimony regarding it.

It has been held that "plain hemstitching" and "straight hemstitching" have the same meaning and are used interchangeably. *Massce & Co.* v. *United States*, 18 C. C. P. A. (Customs) 243, T. D. 44424. It was also pointed out in that case, which involved the same provision now before us, that the term "drawnwork" was not used in the statute and that the term "openwork" was not used as the name of an article but merely as descriptive of a condition in an article. Also, it has been held that hemstitching, as used in paragraph 1430 of the Tariff Act of 1922, is not limited to the stitching done on the outer edges or margins of articles, but includes stitching about the openwork in articles wherever such openwork may be placed. *United States* v. *Scruggs-Vandervoort-Barney Dry Goods Co.*, 18 C. C. P. A. (Customs) 279, T. D. 44450.

In the instant case samples illustrative of the merchandise were introduced in evidence as Exhibits 1, 2, and 3, and much evidence in the nature of expert testimony was offered, nine witnesses being called by the importers and three by the Government. One of the exhibits used in the *Scruggs-Vandervoort-Barney Dry Goods Co.* case, *supra* (a lady's dress in which the hemstitching was held to be straight hemstitching), was introduced, together with a number of other articles containing stitching which various of the importer's witnesses testified constituted "drawnwork" as distinguished from straight hemstitching.

The record does not contain a description of the involved merchandise stated as a whole. The trial court rested its decision on the weight of the evidence and gave no detailed description. In the brief for the Government before us, it is said:

It is firmly established in the record and a physical examination of the exhibits 1, 2 and 3, definitely shows that the openwork thereon was produced by first withdrawing from the articles three separate sets of threads. Thus there was created in the articles three distinct parallel open spaces separated by two narrow strips of the whole fabric. Thereafter an additional thread was introduced to produce the pattern or design as shown by the illustrative exhibits.

We deem it proper to add to the above that there are stitches on the edges of the corner spaces which doubtless have a strengthening effect and insure against raveling.

In the argumentative portion of the Government brief we find the following:

The Government contends * * * that if only any one of the three separate withdrawings appeared on the articles, it would be straight hemstitching, but that the combination of the three sets of withdrawn threads and the addition of the sewing thread, which can be plainly distinguished, particularly in Illustrative Exhibit 2, as going from one set of open threads to the other and then to the third and back again to the first, constitutes not plain hemstitching but fancy hemstitching.

In this argument the Government raises a question of structure which apparently was not presented to the trial court and concerning which there was no testimony. Under these circumstances we shall not consider this question here.

The 1913 tariff act contained, in paragraph 358, a provision reading:

* * * woven fabrics or articles from which threads have been omitted, drawn, punched, or cut, and with threads introduced after weaving, forming figures or designs, not including straight hemstitching; * * *.

In the case of *Lang* v. *United States*, 8 Ct. Cust. Appls. 385, T. D. 37642, which arose under that act, this court reviewed at some length the legislative history and the judicial decisions relating to the subject matter of hemstitching, drawnwork, and openwork. The merchandise there involved is described in the opinion as follows:

The [bureau] scarfs in controversy are drawnwork articles from which warp threads on the sides and weft threads on the ends have been withdrawn, the loose threads remaining being bound together by an additional thread in such a way as to leave irregular open spaces, the size of which is determined by the number of threads withdrawn and by the number of loose threads bound together.

The goods are not embroidered in any way as that term is commonly understood, and the additional thread performs no other office than that of loosely gathering together the free threads and roughly stitching some of the edges of the corner spaces to strengthen the fabric and probably to prevent unraveling. Two rows of hemstitching, placed about an inch apart, embellish the margin of the fabric. The hemstitching is accomplished by pulling out the warp threads on the sides and the weft threads on the ends, and then by means of an additional thread

drawing compactly together not only the released threads of the fabric but also some of the unreleased threads at the top and bottom of the open spaces thus produced.

It was held that the work so described was straight hemstitching and that the merchandise did not fall within the language quoted from paragraph 358, *supra*.

It will be noted that in that instance it was said "Two rows of hemstitching, placed about an inch apart, embellish the margin of the fabric." So far as it is possible to visualize the fabrics there involved from the written description quoted, we are unable to discern any striking difference between the *stitching* there described and that described in the testimony as having been imposed upon the fabrics involved in the instant case, except, of course, the merchandise here has three rows of hemstitched openwork instead of two.

With respect to the testimony in the case, it should be said that there has been no effort to establish a commercial designation of the term "straight hemstitching" different from the common meaning of the term. Of course, the rule is that where testimony relates to common meaning only it is not binding upon the courts, but there are situations in which it is proper to look to it in connection with the merchandise itself and in connection with the definitions of lexicographers and technical authorities. *United States* v. *Scruggs-Vandervoort-Barney Dry Goods Co.*, *supra*. We think the instant controversy presents a situation of that character and, hence, have examined the testimonial record with great care.

In the decisions which we have cited above, definitions of "hemstitching," and processes relating thereto, by various authorities will be found. Their reproduction here is deemed unnecessary. Both parties to this controversy seem to have relied most strongly upon the testimony and definitions given by various of the witnesses speaking as experts, and, as has been said already, the decision of the trial court rests upon the weight of the evidence.

It is not seen wherein it would be of advantage or interest to set forth the evidence in detail.

As we understand the view of the Government witnesses, it was that straight hemstitching resulted only when just one set of threads was withdrawn, and that when more than one set was withdrawn and the groups of separated threads were drawn together, as in Exhibits 1, 2, and 3, it constituted "fancy" hemstitching. One of them stated, in substance, that after threads were withdrawn, leaving a space over one-sixteenth of an inch wide, the work was no longer hemstitching but became "drawnwork," and it was his view that Exhibits 1, 2, and 3 had both "plain" and "fancy" (neither of which terms are used in the statute) hemstitching imposed thereon. The testimony of one of the witnesses for the importers is perhaps capable

of the same interpretation, but at least eight of the nine witnesses called on their behalf expressed the view, very positively, that the involved work upon Exhibits 1, 2, and 3 constituted nothing more than straight hemstitching.

In the light of the reasoning embodied in the authorities which have been cited, and from our careful analysis of the testimony, we are unwilling to hold the decision of the trial court erroneous.

Accordingly, the judgment of the United States Customs Court is *affirmed*.